IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANKLIN D. FICKLE, DQ-6959, )
    Petitioner, )
     )
    v. ) 2:08-cv-1428
     )
GERALD ROZUM et al., )
    Respondents. )

REPORT and RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the petition of Franklin D. Fickle for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Franklin D. Fickle, has presented a petition for a writ of habeas corpus. Fickle is presently service a life sentence imposed following his conviction by a jury of first degree murder at No. CP-43-CR-712-1997 in the Court of Common Pleas of Mercer County, Pennsylvania. This sentence was imposed on June 29, 1998.[1]

An appeal was taken to the Superior Court in which the questions presented were:

    A. Counsel was ineffective for failing to obtain a witness's prior criminal history and pending criminal charges through investigation or pretrial discovery.

    B. Trial counsel was ineffective for failing to object when the prosecutor made constitutionally impermissible references in his closing argument to the absence of defense witnesses and thus indirect comment on Mr. Ficklke's right to silence.

    C. The defendant was denied his constitutional right to a fair trial when the prosecution argued for conviction on the basis of the defendant's failure to offer evidence of certain affirmative defenses and by offering personal opinion as to the defense trial strategy.

---
[1] See: Petition at ¶¶ 1-7.

1

D. Trial counsel was ineffective for failing to object when the Assistant District Attorney argued matters that were not in evidence in closing to the jury.

E. Trial counsel was ineffective in failing to object when the prosecutor raised matters in his opening statement that were not reasonably expected to be proven at trial and advised the jury of penalties involved for first and third degree murder.[2]

On April 26, 2000, the Superior Court affirmed the judgment of sentence and remanded the matter for hearing on the ineffectiveness claims.[3] Leave to appeal to the Pennsylvania Supreme Court was sought and denied on January 9, 2001.[4]

Upon remand, the court addressed the alleged ineffectiveness of counsel issue and relief was denied on April 15, 2002.[5] A timely appeal to the Superior Court was filed in which the issue presented was:

> Was Mr. Fickle denied effective assistance of counsel at trial by virtue of the following instances of trial counsel's act(s) which individually and/or collectively prejudiced him at trial?
>
> (A) Was counsel ineffective for failing to obtain the prior criminal history of a government witness, including pending charges, either through discovery or through independent investigation?
> (B) Was trial counsel ineffective for failing to object to the prosecutor's claim in closing argument that firearms were found in the defendant's home, when there was no testimony offered at trial to substantiate the claim?
> (C) Was trial counsel ineffective for failing to object to the various improper comments of the prosecutor in his opening statement?
> (D) Was trial counsel ineffective for failing to object to the improper cross-examination of Mr. Fickle's character witnesses?
> (E) Was trial counsel ineffective for waiving the right to make an opening statement to the jury?
> (F) Was trial counsel ineffective for failing to file pretrial motions challenging the validity of a search warrant?
> (G) Was trial counsel ineffective in failing to advise Mr. Fickle of his right to request that the "no-adverse inference" instruction not be given, thereby denying Mr. Fickle a legitimate course of trial strategy?
> (H) Was trial counsel ineffective for failing to object to the prosecutor's voir dire of prospective jurors with regard to their feelings on an

---

[2] See: Answer at Exhibit N p.i.
[3] Id at Exhibit O at pp.1-18.
[4] Id at Exhibit T.
[5] Id at Exhibit Z.

<blockquote>
alleged bi-racial affair involving the deceased and the defendant's wife, when the issue was never established by the evidence at trial?[6]
</blockquote>

On July 16, 2003, the Superior Court affirmed the judgment of sentence.[7] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising these same issues.[8] Leave to appeal was denied on February 17, 2004.[9]

On November 12, 2004, Fickle filed a post-conviction petition which was subsequently amended.[10] Following a hearing conducted on August 10, 2007[11], on September 17, 2007, post-conviction relief was denied on the basis that the issues were either previously litigated, withdraw, waived or meritless.[12]

An appeal was taken to the Superior Court in which the issues presented were:

> I. Was the defendant's trial attorney ineffective for failing to object to several statements in the opening statement of the prosecutor which were unsubstantiated by the evidence presented in the case?
>
> II. Was the defendant's trial attorney ineffective for failing to object to several statements in the closing argument of the prosecutor which were not substantiated by the evidence in the case?[13]

On May 2, 2008 the denial of post-conviction relief was affirmed on the grounds that the claims raised were meritless.[14] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising these same issues[15] and allowance of appeal was denied on September 23, 2008.[16]

In the instant petition, executed on January 29, 2009, Fickle contends he is entitled to relief on the following grounds:

> I. Ineffective assistance of counsel – trial counsel
>
> A. Mr. Fickle was denied effective assistance of counsel at trial by virtue of several instances of trial counsel's act(s) or omission(s) which individually and/or collectively prejudiced him at trial.

---

[6] Id. at Exhibit CC pp.3-4.
[7] Id. at Exhibit EE
[8] Id. at Exhibit GG p.4.
[9] Id. at Exhibit HH.
[10] Id. at Exhibits TT, UU, VV, WW.
[11] It appears that the post-conviction hearings were conducted on September 7, 2001 and November 27, 2001 and that the proceeding on August 10, 2007 was an argument rather than a hearing.
[12] See: Answer at Exhibit AAA.
[13] Id. at Exhibit DDD p.4.
[14] Id. at Exhibit III.
[15] Id. at Exhibit KKK p.3.
[16] Id. at Exhibit LLL.

B. Trial counsel was ineffective that in this particular case it undermined the truth determining process to the point that no reliable adjudication of guilt or innocence could have taken place.
C. The defendant was denied his right to effective assistance representation as required by the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution.
D. Trial counsel had no reasonable basis designed to effectuate the defendant's interests.
E. Trial counsel violated the defendant's right to a fair trial by an impartial jury as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by:
  1. Failing to obtain the prior criminal history and pending charges through investigation or pre-trial discovery of the Commonwealth's key witness [Darren Gibson].
  2. Failing to object when the prosecutor made constitutionally impermissible references in his closing argument to the absence of defense witnesses and thus indirect comment on Mr. Fickle's right to silence.
  3. Denying the defendant his constitutional right to a fair trial when the prosecution argued for conviction on the basis of the defendant's failure to offer evidence of certain affirmative defenses and by offering personal opinion as to the defense trial strategy.
  4. Failing to object to several statements in the closing argument of the prosecutor which were unsubstantiated by the evidence in the case.
  5. Failing to object to several statements in the opening statement of the prosecutor which were unsubstantiated by the evidence in the case and were not reasonably expected to be proven at trial.
  6. Failing to object to the prosecutor's advice to the jury as to the penalties involved for first and third degree murder.
  7. Failing to object to the prosecutor's improperly expressing belief as to the truthfulness of certain witnesses and misstated the burden of proof in this case.
  8. Failing to object to the improper cross-examination of Mr. Fickle's character witnesses.
  9. Failing to file a pre-trial motion challenging the validity of a search warrant.
  10. Waiving the right to make an opening statement to the jury.
  11. Failing to object to the prosecutor's voir dire of prospective jurors with regard to hypothetical questions concerning issues which were never established at trial.
II. Ineffective assistance of counsel – direct appeals counsel.
  A. Direct appeals counsel did not provide effective assistance by virtue of counsel's failure to raise the issues of prosecutorial misconduct and ineffective assistance of counsel which were raised on PCRA.
  B. Appellate counsel did not have a reasonable basis designed to effectuate the defendant's interests.
III. Abuse of discretion – trial court

      A. The trial court erred in admitting into evidence photographs that were highly prejudicial, inflammatory, and gruesome and had no probative value.
IV.    Evidence
      A. The evidence was insufficient to sustain a conviction of first degree murder.[17]

The factual background to this prosecution is set forth in the July 16, 2003 Memorandum of the Superior Court citing the trial court's December 30, 1998 opinion:

> The Commonwealth's evidence[,] which was mostly circumstantial but compelling, established that [Appellant] shot Darryl Cozart five times killing him in the basement of [Appelant]'s home. The victim had a long[-]term relationship with [Appellant]'s wife from whom [Appellant] was separated.
>
> The shootings occurred on late Saturday evening, March [1], 1997, or early Sunday morning, March 2, 1997. On March [2], 1997, [Appellant] called a friend to help him move the victim's body and at that time admitted to the friend that he had killed the victim because he was 'messing with my family'. [Appellant] also stated that the victim was 'garbage'.
>
> When the victim's body was found all of his valuables remained on his body including money and a gold lighter. The body was loaded into a vehicle at [Appellant]'s home in Hermitage, Pennsylvania and dumped beside Route 11, a limited access highway near Ashtabula, Ohio, along the same route [Appellant] used to travel to and from work in Ashtabula, Ohio.
>
> On March 7, 1997 the victim's van was found at the Airport Inn in Vienna, Ohio. The night before [Appellant] had a friend follow him to the Airport Inn where Defendant left his truck stating that his truck had to be left there to be repaired. However, [Appellant] was seen to return home in his own truck within two hours. The victim's van was found at the Airport Inn at 5:30 a.m. the next morning.
>
> The victim's van had been repainted black. Black paint and blood were found in [Appellant]'s garage as well as on a pair of men's blue jeans. The paint on the pants and the garage matched the black paint on the van.
>
> The victim was shot five times: once in the back of the head; once in the face; and three times in the back with a .44 caliber gun. The weapon had a cloth wrapped around it to provide a silencer affect. An orange towel with gun powder and bullet holes in it were found at [Appellant]'s residence. Towel fibers matching that towel were found in the cellar of [Appellant]'s home. The men's blue jeans and the orange towel were found in a garbage container at [Appellant]'s home.

---

[17] See: Petition at ¶13.

Forensic scientists found fibers on the deceased[']s clothes and in [Appellant]'s cellar sink similar to the fibers on the towel and also matched fibers [were] found in [Appellant]'s cellar joi[st]. The blood stains found on the towel and on the furnace duct pipe were human blood. The blood stains found on the running board of the deceased's van were consistent with the decedent's; and the hairs in[Appellant]'s cellar; ceiling; joi[sts]; and furnace pipes were the same as the decedent's.

The autopsy revealed the shot to the back of the decedent's head entered his brain; the shot to the left side of the decedent's face went through the face and right eye socket; and the three gunshot wounds to the back destroyed the spinal column and perforated the lungs. All of these shots were to vital parts of the body. Another bullet wound to the abdomen area may have been a ricochet.

A rope was found around the decedent's neck and marks on his back indicated he had been dragged over a rough surface consistent with the cellar floor and steps, and the garage floor where it was rolled into a rug. The deceased had no drugs or alcohol in his system [.]

One of the walls of [Appellant]'s basement had been recently repainted. Bullet fragments were found in the cellar walls. Hair and scalp tissue of the deceased was found in the cellar ceiling wood. The victim's bandana with a bullet hole in it and with blood of the decedent on it were found on the first floor of [Appellant]'s home, the victim was killed with [.]44 caliber bullets and additional [.]44 caliber ammunition was found upstairs in [Appellant]'s home. While other handguns were found in [Appellant]'s home, a [.44] caliber handgun was not found.

[Appellant] lived at home alone with his three children. None of the three children were at home on Saturday evening March 1, 1997, the evening of the shootings. [Appellant] had arranged for the children to be out of the house by obtaining a neighbor to babysit. The evidence showed that as early as 12:30 p.m. on Saturday afternoon March 1, 1997, [Appellant] was making arrangements to have the children out of the house that Saturday night.[18]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

---

[18] See: Answer Exhibit EE at pp.1-3.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra. Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.
> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...

> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

Since it appears that the petitioner raised the issues he seeks to raise here or their equivalents in the state courts, they are properly before this Court.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Brown v. Wenerowicz , 2011 W.L. 6091408(C.A.3(Pa.)).

Petitioner's first argument is that counsel was constitutionally deficient in that she failed to obtain the criminal record of the Commonwealth's key witness, Darren Gibson who testified that the petitioner called him to assist in disposing of the victim. At the trial,

8

Darren Gibson testified as a witness for the Commonwealth.[19] He testified that the petitioner contacted him and asked him to help move some furniture (TT. 108); that the petitioner asked him to help move a tarp covered object into the back of his van (TT.117); that when he lifted the object he realized that it was a body (TT.117-119, 120, 132); that petitioner conceded that he had committed the homicide because the victim "was messing with [his]family" (TT.119,134); that he did not contact the police for some time out of fear of his involvement (TT.124-128) and that he eventually contacted the police and related the information about the events (TT.128). In addition, Gibson testified as to his two prior criminal offenses (TT.129) and that he never sought any deal from the Commonwealth in exchange for his testimony in the petitioner's case (TT. 129,130,136).

At the post-conviction hearing held on September 7, 2001 and November 27, 2001, Veronica Smith, petitioner's trial counsel was called as a witness.

The first substantive issue addressed was petitioner's claim was that counsel was ineffective for failing to secure the criminal record of Darren Gibson, the Commonwealth's primary witness. Trial counsel testified that while she did not make a specific request for the witness' criminal record, she did make a general request for favorable evidence (PCRA. 9/7/01 p.17); that she was aware of Gibson's criminal history at the time of the trial based on information gleaned by her investigator (PCRA 9/7/01 pp. 18,23-24,41,56); that her investigator had concluded that Gibson was not receiving any favorable benefits in exchange for his testimony (PCRA 9/7/01 p.30); that Gibson's testimony was consistent with his earlier statements (PCRA 9/7/01 pp.58-59, 60-61); that her trial strategy was to introduce Gibson's criminal record into evidence (PCRA 9/7/01 p.64)[20] and that she had no specific recollection as to whether she had requested a specific instruction on crimen falsi but believed that the witness' credibility was adequately addressed by the general jury instructions on credibility (PCRA 9/7/01 p.82).

Fickle's defense counsel on another criminal case testified that no plea agreement existed between Gibson and the Commonwealth in exchange for his testimony against the petitioner (PCRA 9/7/01 pp.86-87)

---

[19] All references to the trial transcript refer to jury trial record from May 11-14, 1998 and are marked "TT".

[20] As noted above, during the course of his testimony Gibson testified about his criminal record (TT.129) and that he never received any benefit in exchange for testifying against the petitioner (TT.130,136).

Thus from the record it is clear that while defense counsel might have more aggressively sought out information concerning Gibson, any benefit that might have been gained from additional investigation would not have altered the information before the jury and could not have led to a different result. For this reason, counsel cannot be deemed ineffective for failing to more aggressively pursue this issue since no prejudice occurred.

The petitioner's second and third arguments are that counsel was ineffective in failing to object to the prosecution's closing argument relating to the absence of defense witnesses thereby impermissibly commenting on the petitioner's silence. After summarizing the evidence, the prosecutor stated "not a single defense witness [has come forward] to contest those issues which have been proven to you beyond a reasonable doubt" (TT.481). Clearly it is a stretch to argue ineffectiveness where the trial record clearly demonstrates that other than calling character witnesses, no other evidence was presented by the defense which contradicted the strong case presented by the Commonwealth. Indeed, defense counsel testified that her strategy was to hope for a compromise verdict by showing that first degree murder was not in keeping with the petitioner's character (PCRA 11/27/2001 p.46). While clearly an impermissible argument by the prosecutor, it is also apparent that in light of the testimony presented, no conclusion other than guilt could have been rendered and defense counsel cannot be faulted for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302 (3d Cir.2010).

> In addition, in reviewing this claim, the Superior Court on direct appeal observed:
>
> Here, the prosecutor's remarks are merely a comment on the strength of the Commonwealth's evidence and are not an impermissible comment on appellant's right to remain silent … The prosecutor simply pointed out to the jury evidence that was uncontradicted … Accordingly, trial counsel cannot be found ineffective for failing to object to the prosecutor's remarks.[21]

This factual determination is uncontradicted and entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1). Accordingly, the petitioner's second and third allegations do not provide a basis for relief.

---

[21] See: Exhibit O to the answer at pp.7-8.

The petitioner fourth contention is that counsel was ineffective in failing to object to the prosecutor's closing argument which raised matters which were not in evidence. Specifically, the petitioner's alleged basis for ineffectiveness arises from the failure of defense counsel to object to the prosecutor's closing argument concerning "where's the handgun" (TT.475) implying a possible comment on the petitioner failure to present evidence. At the post-conviction hearing defense counsel testified that she did not object since the prosecutor was merely stating a fact i.e., that the weapon was never discovered (PCRA 11/27/2001 p.31). This conclusion was supported by the Superior Court's conclusion that "the prosecutor simply pointed out to the jury evidence that was uncontradicted.[22] Counsel cannot be deemed to have been ineffective for failing to object to a statement of the obvious, and as a result petitioner suffered no harm.

The petitioner next alleges that counsel was ineffective for failing to object to several remarks in the prosecutor's opening that were unsubstantiated by the evidence in the case. Specifically, in this regard, the petitioner raises objection to the prosecutor's opening referring to the difference between first and third degree murder especially as they relate to the penalty which might be imposed (TT.20-23) and the possible motive for the murder (TT. 24-25). During his opening the prosecutor related the fact that the petitioner had been charged with first and third degree murder; explained the differences between these offenses and the difference in penalties, as well as the prosecution's expectation that the evidence would demonstrate that the appropriate verdict was first degree murder and that the prosecution expected to try to demonstrate that the motive for the murder was an affair between the victim and the petitioner's wife (TT.24-25).[23] As previously discussed defense counsel, as a matter of trial strategy, did not object to the prosecutor discussing the difference between the charges levied and the relevant penalties in the hope that the jury might reach a lesser verdict in light of the evidence presented. In addition, the prosecutor also informed the jury that their purpose was to try the homicide and that any possible affair was not for its consideration (TT.45). Thus, because we are dealing with an appropriate defense strategy counsel's performance cannot be deemed ineffective.

The petitioner's sixth argument is that counsel was ineffective for failing to object to the prosecutor's advice to the jury on the different penalties for first and third degree murder. This matter has been fully discussed above and does not provide a basis for relief.

---

[22] Id. at p.8.
[23] See: Petition at pp. 58-72.

11

Petitioner's seventh argument is that counsel was ineffective for failing to object to the prosecutor's expression as to the veracity of certain witnesses and misstatement of the burden of proof. The primary witness for the prosecution was Darren Gibson who detailed the crime. In her closing defense counsel argued that Gibson is "the type of person who would lie. He's a criminal; and specifically, he's a thief. In fact, he's a thief and a burglar… Why would he be lying in this case? Well, for one, he wants to minimize his involvement... he's someone who was previously involved in the Criminal Justice System; and he knows that the best way to protect himself is to give important information on somebody else…" (TT. 440-441). In light of the testimony offered, this challenge to Gibson's credibility was clearly the best argument defense counsel could make. In response to this argument, the prosecutor stated, "the cross-examination of Darren Gibson was feeble. His testimony wasn't shaken. If anything, it rings out all the more with truth" (TT. 470). This clearly is proper argument in light of any attempt to disparage the prosecution's chief witness. Clearly, such argument did not infect the trial with unfairness. Darden v. Wainwright, 477 U.S. 168 (1986) but rather must be viewed in context of the prosecution as a whole, Moore v. Morton 255 F.3d 95 (3d Cir.2001). Thus, there is likewise no substance to this claim.

Petitioner's eighth argument is that counsel was ineffective for failing to object to the improper cross-examination of the petitioner's character witnesses. At trial, the defense called several character witnesses. Jeff Grande testified that he knew the petitioner for about ten years and was aware of his reputation for being a peaceful, nonviolent individual (TT.416) and that although people do not normally discuss an individual's reputation in the community, he had done so with others (TT.417). Dennis Link was also called as a character witness and testified that the petitioner was a peaceful law-abiding church going individual (TT.419). Kenneth Hodil also testified that he had discussed the petitioner's reputation with others in the community and knew that he had a reputation as a peaceful nonviolent individual (TT.421, 423). Pastor John Frey testified that he had discussed the petitioner's reputation with other church members and that the petitioner had a reputation as being a peaceful nonviolent individual (TT.425). Other than inquiring as to the basis for the witnesses' testimony the prosecutor did not make any comment on the veracity of that testimony and thus counsel cannot be faulted for failing to object to a non-issue. Real v. Shannon, supra.

Petitioner's ninth basis for claiming ineffectiveness, arises from defense counsel's failure to move to suppress the search warrant issued for petitioner's home and vehicles.[24] Specifically Fickle argues that the attachments to the affidavit were not incorporated in the statement of probable cause. This allegation is clearly erroneous as demonstrated on the face of the application which specifically states "see attached sheets" thereby incorporating them by reference and which encompassed the scope of the investigation including an interview of Darren Gibson wherein he essentially related his trial testimony.[25]

In upholding the validity of the search warrant, the Superior Court observed "the application clearly stated that additional pages were attached, and no evidence existed that the issuing authority was not aware of the additional pages or failed to read those pages".[26] This factual finding is presumed correct here, and nothing has been presented to overcome this presumption. 28 U.S.C. 2254(e)(1). In addition, at the post-conviction hearing trial counsel testified that she had determined that there was no basis upon which the warrant was subject to attack (PCRA 11/27/2001 p.79-81). Thus, once again counsel cannot be deemed ineffective for failing to raise this issue.

The petitioner's next contends that counsel was ineffective for failing to make an opening statement to the jury. Trial counsel testified that she decided not to open to the jury at the start of the prosecution because at that time no decision had been made as to whether or not the petitioner would testify; that after the prosecution rested she elected not to open since after hearing the prosecution's case she could only call character witnesses and believed that her best argument i.e. that it was not in keeping with the petitioner's character would best be made during her closing (PCRA 11/27/2001 pp.68-72). As a matter of trial strategy, this claim cannot provide a basis for relief. <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir.2006).

The petitioner's final argument on ineffectiveness is that defense counsel failed to object to the prosecutor's voir dire of prospective jurors with questions regarding matter which were never introduced at trial. Specifically, during the jury selection process, the prosecutor asked whether or not they would be prejudiced if the evidence demonstrated a biracial affair between the victim and the petitioner's wife. In reviewing this issue, the Superior Court wrote "we had

---

[24] See: Exhibit NNN to the answer.
[25] Id.
[26] See: Exhibit EE pp.18-19.

previously found that sufficient evidence had been introduced at trial to permit the
Commonwealth to argue in its opening and closing that a romantic relationship existed between
[petitioner's wife] and [the victim]."[27] Accordingly, the attitude of the prospective jurors on this
matter was critical in exposing potential bias and for this reason a valid ground for inquiry. Since
an impartial jury is the cornerstone of our jury trial process this inquiry was appropriate. Morgan
v. Illinois, 504 U.S. 719 (1993).

The petitioner next contends that appellate counsel was ineffective for failing to raise
issues of prosecutorial misconduct and counsel's ineffectiveness and for lacking a plan to urge
the petitioner's best interests. Since we have previously determined that trial counsel was not
ineffective, appellate counsel cannot be deemed ineffective for failing to raise these issues,
although they were raised in the post-conviction proceedings.

As we noted above, in order to prevail on a claim of ineffective assistance of counsel, the
petitioner must demonstrate both that counsel's performance was deficient, and that as a result he
suffered prejudice. This requirement is conjunctive. In the instant case, as recited above, the
evidence of the petitioner's guilt was overwhelming, and while defense counsel could certainly
have been more aggressive, there are some cases which even Perry Mason cannot win, and this
was one of them. For this reason, it cannot be concluded as a matter of law that the petitioner
suffered any prejudice as a result of counsel's performance. Brown v. Wenerowicz, supra.
Accordingly, these claims do not provide a basis for relief.

The petitioner also contends that he is entitled to relief as a result of an abuse of its
discretion by the trial court. Specifically, he contends that the trial court abused its discretion
when, over the objections of defense counsel, it permitted introduction of photographs of the
victim. The admission of evidence is governed by state law, and is not cognizable in federal
habeas proceeding unless fundamental unfairness occurs. Smith v. Phillips, 455 U.S. 209 (1982).
In reviewing this claim, the Superior Court wrote:

> Prior to showing each group of photographs to the jury… the trial court instructed
> the jury in both instances to disregard any visceral reaction or inflammatory or
> prejudicial influence that may arise from viewing the photographs, and also
> clearly explained the materiality and relevance of why the photographs were
> being shown.

---

[27] Id. at p.22.

> We have reviewed the photographs depicting the location of the body alongside the road and agree with the trial court that they are not inflammatory and that each was relevant and could assist the jury in understanding the facts. We find no abuse of discretion by their admission into evidence.
>
> We also find that the trial court did not abuse its discretion in admitting the photographs depicting the gunshot wounds and striation marks. We note that the photographs are not unduly gruesome in that only the relevant wounds and marks on the body are displayed and there is almost no depiction of blood…[28]

As a matter of state law this conclusion is binding here. Waddington v. Sarausad, 129 S.Ct. 823, 832 n.5 (2009). In addition, there is no showing made that the introduction of this photographs caused any undue prejudice to the petitioner, and this claim does not provide a basis for relief here.

Petitioner's final argument is that the evidence was insufficient as a matter of law to sustain a first degree murder conviction. The question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Pennsylvania law provides "a criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. §2502(a). After reviewing the evidence the Superior Court concluded that the evidence was sufficient as a matter of Pennsylvania law to support the conviction.[29] Accordingly, as a matter of state law interpretation it is not subject to review here. Waddington, supra. In addition, we have fully set forth the summary of the trial evidence as made by the Superior Court and conclude independently, that the evidence was more than sufficient to result in a first degree murder conviction.

Because, there is no showing here that Fickle's conviction was secured in any manner contrary to federal law as determined by the United States Supreme Court, nor occurred as an improper application of that law, he is not entitled to relief here.

Accordingly, it is recommended that the petition of Franklin D. Fickle for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

---

[28] See: Exhibit O to the answer at p.17.
[29] Id. at p.14.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

                                                                    Respectfully submitted,
                                                                    Robert C. Mitchell
Filed: December 20, 2011                         United States Magistrate Judge