IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANKLIN D. FICKLE, )
    Petitioner, )
  )
vs. ) Civil Action No. 08-1428
  )
GERALD ROZUM, et al., )
    Respondents. )

## MEMORANDUM ORDER

On December 20, 2011, United States Magistrate Judge Robert C. Mitchell filed a Report and Recommendation (ECF No. 44), recommending that the petition for writ of habeas corpus filed by petitioner Franklin D. Fickle (ECF No. 7) should be dismissed and that a certificate of appealability should be denied. Service of the Report and Recommendation was made on the parties, and the petitioner filed objections (ECF No. 45) on January 25, 2012.

In his objections, the petitioner disagrees with the conclusions reached by the magistrate judge in the Report and Recommendation ("R&R") with respect to the merits of his claims. Those objections are overruled. In addition, he contends that the R&R failed to address certain claims raised in the petition. Those claims are addressed herein.

The petitioner raises a number of claims arising out of trial counsel's alleged ineffectiveness in failing to object to certain comments made by the prosecution during the Commonwealth's closing argument and contends that the R&R addressed only one of them, claim 4(b). First, he contends (in claim 4(a)) that the prosecutor referred to a romantic relationship between the victim (Darryl Cozart) and the petitioner's wife (Cindy Fickle) from whom the petitioner was separated, as a possible motive for the crime, but there was no evidence to support his comment. With respect to this claim, the Pennsylvania Superior Court (in its first

opinion) held as follows:

> Here, the Commonwealth set forth as a possible motive for the murder the existence of a romantic relationship between the victim and Ms. Fickle. The evidence established that the victim and Ms. Fickle worked together; often shared rides home together; and that on the night of the murder, Ms. Fickle gave the victim a ride home. Furthermore, the prosecutor based his argument in this regard, in part, on the testimony of two co-workers, one of whom described the relationship as "Very close.... I really thought something was going on." (Notes of testimony, 5/13/98 at 387.) The co-worker testified that Ms. Fickle "was more friendly with [Cozart] than I was as a friend. It was a little bit further than that." (Notes of testimony, 5/11/98 at 71.) She also testified that the relationship was out of the norm and unusual. Finally, Officer Rosa testified that during the course of his investigation, [petitioner] stated to him that [he] and his wife "were in the process of getting back together, and it looked pretty good that they would be able to get back together." (Notes of testimony, 5/12/98 at 221.) He also testified that [petitioner] was hoping his marriage was improving and that he and his wife were reconciling. (Id.) We conclude that the prosecutor's argument that a romantic relationship existed was a fair inference based on the above evidence. Commonwealth v. Cox, 728 A.2d 923, 931 (Pa. Super. 1999). Consequently, counsel cannot be found ineffective in this regard.

(Answer Ex. O at 8-9) (footnotes omitted). The court also noted that defense counsel had raised in his own closing argument that there could be no significance to an affair because the petitioner had filed for divorce from his wife six months before the murder and thus the prosecutor's comment was a fair response to this remark. Id. at 9 n.4.

Thus, the Superior Court resolved this issue based upon Pennsylvania law governing the permissible scope of a prosecutor's closing argument. As the Supreme Court recently reiterated, "we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). In addition, because this claim is raised as an ineffectiveness of counsel claim, the petitioner must show that the state courts "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone,

2

535 U.S. 685, 699 (2002). He has failed to make this showing. Finally, as noted throughout the R&R with respect to all of his claims, the petitioner has failed to demonstrate prejudice, namely "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Therefore, the petitioner has failed to demonstrate that he is entitled to relief with respect to this claim.

The petitioner then lists twelve additional claims that allegedly arise out of the prosecution's closing argument and counsel's failure to object thereto. In claim 4(c), he contends that the prosecution stated that a witness named Wayne Miller had testified that he saw a person "at this site" (where the body was eventually located) several days before, but Miller had not actually said so. In claim 4(d), he contends that the prosecution misrepresented what his neighbors, the Trumans, had said about being surprised at seeing his car returning home only a few hours after Mr. Truman helped the petitioner drop it off to be repaired. In claim 4(e), he contends that the prosecution falsely stated that his truck was seen in the same parking lot as the victim's van during the same time period. In claim 4(f), he contends that the prosecution falsely represented that an expert witness had testified that certain pieces of evidence "matched" (a beige coat that a witness saw the petitioner wearing, black paint on the petitioner's blue jeans matching paint found on the floor of the victim's van, a yellow towel found in the petitioner's trash can with gun residue on it and a bullet hole through it as though it had been used as a silencer). In claim 4(g), he contends that the prosecution falsely stated that he killed the victim in his basement even though they was no ricochet damage and no stray bullets found there. In claim 4(h), he contends that the prosecution falsely stated that there was a "cover-up" to explain the

3

lack of blood or luminol traces in his basement. In claim 4(i), he contends that the prosecution falsely represented that the reason there was no blood in his truck was because he had wrapped the body in a tarp because a luminol test showed that the body had been wrapped in a rope. In claim 4(j), he contends that the prosecution told the jury that there was blood on the floor of his garage but did not admit that the Commonwealth could not prove that this blood matched that of the victim. In claim 4(k), he contends that the prosecution falsely stated that the petitioner had acted alone when the evidence showed that the victim was heavy and that 2 or 3 guns had been used. In claim 4(*l*), he contends that the prosecution falsely stated that the coroner had indicated that the body was in the condition he would have expected it to be when the testimony indicated that it had been outside for no more than 72 hours prior to its discovery on March 10, 1997 and thus he could not have loaded it into an open-bed truck on March 2, 1997 as prosecution witness Darren Gibson testified. In claim 4(m), he contends that the prosecution falsely stated that only one wall of his basement was painted. Finally, in claim 4(n), he contends that the prosecution falsely told the jury that the Commonwealth had proved motive, opportunity, method, confession and cover-up.

With respect to all of these claims, they may have been raised in his PCRA petition (Answer Ex. TT paragraph 6, at various subparagraphs). The PCRA court held that:

> The Defendant having previously litigated on direct appeal and again on remand multiple claims of ineffectiveness for failure to object to parts of the Commonwealth's opening and closing, [he] cannot now again in the present PCRA petition raise the issue of ineffectiveness for failure to object to parts of the Commonwealth's opening and closing.
>
> If the conclusion were otherwise, Defendant, theoretically, could file as many PCRAs as there are sentences in the Commonwealth's opening and closing,

which he had not previously alleged trial counsel to have been ineffective for not objecting to.

(Answer Ex. AAA at 12.)

In addition, these claims were not raised to the Superior Court on appeal from the denial of his PCRA petition. (Answer Ex. DDD at 9.) The Superior Court addressed only the three issues raised in the brief. (Answer Ex. III at 5-6.) Thus, these additional claims are unexhausted and procedurally barred from review herein. See Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2008); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).

Petitioner also raises a number of claims arising out of trial counsel's alleged ineffectiveness in failing to object to certain comments made by the prosecution during the Commonwealth's opening argument and contends that the R&R addressed only two of them, claims 5(a) and (b). First, in claim 5(c), he contends that the prosecution stated that there were 6 bullets in the victim but the evidence was ambiguous as to the number of wounds. In claim 5(d), he contends that the prosecution falsely stated that Darren Gibson would testify that he noticed a dark-colored Chevy Astro van in the petitioner's garage but in fact Gibson did not know the make or model of the van. In claim 5(e), he contends that the prosecution stated that a witness named Wayne Miller would testify that he saw a person "at this site" (where the body was eventually located) several days before, but Miller did not actually testify to this. In claim 5(f), he contends that the prosecution falsely stated that his neighbors, the Trumans, would say that they were surprised his car returned home so soon, but they did not testify to this. In claim 5(g), he contends the prosecution falsely stated that evidence would show that his truck was seen in the same parking lot as the victim's van during the same time period, but that never occurred. In


claim 5(h), he contends that the prosecutor falsely stated that the evidence collected from the victim's van would "match up" to the petitioner's basement, but it did not. In claim 5(j), he contends that the prosecution falsely stated that only one wall of his basement was painted and that bleach was used to clean the walls, but no evidence ever supported this statement. In claim 5(k), he contends that the prosecutor made reference to a duct pipe that had been removed from the petitioner's basement which had minute specks of human blood on it, but no evidence linked this blood to the victim. In claim 5(*l*), he contends that the prosecution falsely stated that the victim was killed in the petitioner's home but no evidence ever supported this statement. In claim 5(m), he contends that the prosecution referred to a bandana that had a bullet hole through it and bloodstains on it, but there were two bandanas found and they were not the ones the police were searching for. Finally, in claim 5(n), he contends that the prosecution told the jury that a rope was found around the victim and that it was used to drag him out of the petitioner's basement, but the luminol test did not support this statement.

With respect to all of these claims, as noted above with respect to claims relating to the prosecution's closing argument, the petitioner may have raised them in his PCRA petition (Answer Ex. TT, paragraph 6, at various subparagraphs), but the PCRA court held that he could not continue to raise previously litigated claims regarding counsel's failure to object to certain statements made by the prosecution in its opening and closing arguments (Answer Ex. AAA at 12). In addition, he did not raise them in his appeal to the Superior Court from the denial of his PCRA petition. (Answer Ex. DDD at 8.) The Superior Court addressed only the three issues he raised. (Answer Ex. III at 2-5.) Therefore, these additional claims are unexhausted and procedurally barred from review herein.

In claim 5(i), he contends that the prosecution told the jury that a yellow towel was used as a silencer. With respect to this claim (which was discussed together with the claim that the black paint stains on the blue jeans found at the petitioner's home were similar to the paint found in the victim's van), the Superior Court, on appeal from the denial of the PCRA petition, held as follows:

> The Commonwealth presented the expert testimony of Bruce Taskett, a forensic scientist employed by the Pennsylvania State Police Crime Laboratory. Taskett testified that the paint stains on the blue jeans found at [the petitioner's] home were the same type of paint that was found in the victim's van. Taskett concluded that both samples of black paint "exhibited the same visual, chemical and microscopic characteristics.... They were similar. They could have come from the same origin." N.T. Trial, 5/13/1998, at 337. Taskett also testified that the yellow fibers found on the victim were the same color as the fibers of the yellow towel found in [petitioner's] basement. Id. at 335. Jack Wall, a forensic firearm examiner for the Pennsylvania State Police Crime Laboratory, testified that he examined the towel. He stated that he found gun residue and physical evidence that the towel "was in contact with the muzzle of a firearm when the firearm was discharged." Id. at 365.
>
> The prosecutor reasonably referenced the towel and the matching black paint in his opening and merely commented on the physical evidence he would introduce at trial. Therefore, we find that trial counsel was not ineffective for failing to object, nor would it have had any effect on the conviction in this case if he had objected.

(Answer Ex. III at 4-5) (citing Commonwealth v. Begley, 780 A.2d 605, 626 (Pa. 2001).

With respect to this claim, the petitioner has failed to show that the state courts "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 699. In addition, he has failed to demonstrate prejudice, namely "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Therefore, the petitioner has failed to demonstrate that he is entitled to relief with respect to this claim.

AND NOW, this 8th day of February, 2012,

IT IS ORDERED that the petition for writ of habeas corpus filed by petitioner Franklin D. Fickle (ECF No. 7) is dismissed and, because reasonable jurists conclude that a basis for appeal exists, a certificate of appealability is denied.

Magistrate Judge Mitchell's Report and Recommendation dated December 20, 2011 (ECF No. 44) is adopted as the opinion of the Court, as supplemented by the instant Memorandum Order.

Nora Barry Fischer
United States District Judge

cc:   Franklin D. Fickle
      DQ-6959
      SCI Somerset
      1600 Walters Mill Road
      Somerset, PA 15510

8